# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| BRETT RUSSELL WILLIAMS ) | Case No. 5:22-cr-377-LCB-HNJ |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.  Introduction

If a party objects to a portion of a Magistrate Judge's report or proposed findings or recommendations, the district court must review *de novo* those portions of the report to which the party has specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  After a careful *de novo* review of the entire record in this case, the Court **ADOPTS** the magistrate judge's report, **ACCEPTS** his recommendation, and **OVERRULES** the Defendant's objections. Consistent with the report and recommendation, the Defendant's motion to suppress (Doc. 14) is **DENIED.**

### II.  Factual Background

The Magistrate Judge's Report and Recommendation discusses the facts of this case in substantial detail, which will not be needlessly repeated here. To make a long story short, Brett Williams (a convicted felon) allegedly ordered an illegal

firearm silencer from China. The silencer was intercepted by customs agents, and agents from the Bureau of Alcohol, Tobacco, and Firearms obtained an anticipatory warrant that authorized the search and seizure of the following:

1. The silencer, and any documents indicating the possession, sale, receipt, purchase or barter for items in exchange for firearms (silencer) or property, specifically, containers, labels, receipts, and other items pertaining to the possession of firearms (silencer).
2. Records that establish the persons who have control, possession, custody or dominion over the property and vehicles searched and from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, and vehicle registration information or ownership warranties, receipts for vehicle parts and repairs and telephone answering machine introductions and fingerprints.

(Doc. 28-2 at 5).

While executing the warrant, law enforcement conducted a protective sweep, during which they discovered a .22 rifle, along with cocaine residue, methamphetamine, and paraphernalia, all in plain view. Then, while conducting a search of the home for the evidence described in the warrant, law enforcement appears to have moved a bathroom shelf covering an air vent, which revealed a hidden bag of cocaine.

Following his indictment, Williams moved to suppress the .22 rifle and the bag of cocaine as fruits of an illegal search. (Doc. 14). The Magistrate Judge entered a report on August 1, 2023 recommending the denial of Williams's motion and advised Williams of his right to file written objections within 14 days. (Doc. 32). Williams timely filed objections to the Report and Recommendation on August 15, 2023. (Doc. 37).

**III. Discussion**

As a general matter, "[i]t goes without saying that the Fourth Amendment bars only unreasonable searches and seizures," as determined by "balanc[ing] the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Maryland v. Buie*, 494 U.S. 325, 331 (1990).

Here, Williams raises six objections to the report and recommendation of the Magistrate Judge, many of which blur together. In a nutshell, however, Williams claims that law enforcement conducted an impermissible general search of his home, or at least exceeded the scope of the search warrant during their search, and that the rifle and cocaine discovered during the search should thus be excluded from evidence. However, none of Williams' arguments persuade the Court that the searches and seizures he contests were unreasonable or otherwise unlawful.

A. **Defendant's objection: Law enforcement exceeded the narrow scope of the warrant in their search of Defendant's home.**

First, Williams contends that officers exceeded the "narrow scope" of the warrant. (Doc. 37 at 1). To that end, Williams principally objects to the findings of the Report and Recommendation that the .22 rifle was lawfully found in the garage (1) during a protective sweep and (2) under the plain view doctrine, and that (3) the bag of cocaine was lawfully found in the air vent under the plain view doctrine. *Id.*

1. **Defendant's objection: The government failed to prove that the .22 rifle was found during a protective sweep.**

Williams does not challenge the propriety of the protective sweep itself. Instead, Williams' chief objection is that the .22 rifle was discovered "after the protective sweep had concluded," rather than during the protective sweep. *Id.* In support, he offers a portion of testimony from an ATF agent on scene and claims that this agent "admitted that he had only heard that someone had seen a gun in the garage . . . that 'gun' could have referred to one of the air guns found in the garage", and that another agent "later searched the garage, after the sweep, and found the .22 rifle." *Id.* at 2.

But this ignores testimony (quoted by Williams in his objections) that the .22 rifle was *discovered* during the protective sweep and *secured* afterward. *See id.* at 3 ("I know someone saw [the gun] from the get-go during the sweep because someone made a comment about it."); *Id.* (A; "Someone mentioned that there's a gun hanging

there on the wall." Q: "[T]here was a .22 that was later found by Agent Grider, correct?" A: "That's the gun I'm referring to.")

Williams cites no case to support his claim that seizure must immediately follow discovery during a valid protective sweep. To the contrary, law enforcement was "of course, free to seize any evidence they discovered in plain view within the proper scope of the protective sweep." *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971)).

### 2. Defendant's objection: The government failed to prove that the .22 rifle was found in plain view.

That brings us to Williams' next objection, that the .22 rifle was not discovered in plain view. As Williams correctly points out, evidence can be seized under the plain view doctrine if "(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." (Doc. 38 at 5) (quoting *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006)). Williams' application of the plain view requirements is wrong, however.

Williams attacks the seizure of the rifle mostly on the grounds of the first prong and repeats his argument that law enforcement were not lawfully in the garage. Yet this argument again ignores that Williams does not contest the propriety of the protective sweep, which allowed law enforcement to enter the garage and conduct a

5

brief search. As for the second prong, Williams claims that the incriminating character of the rifle was not immediately apparent because "Americans have a Second Amendment right to possess arms for self-defense in their homes," and because there were two other adults and two children in the residence who could have owned the rifle. (Doc. 38 at 6) (citing *D.C. v. Heller*, 554 U.S. 570, 635). Williams' constitutional arguments are fruitless, since the validity of restrictions on felon gun-ownership is not in question. *See, e.g.*, *United States v. Isaac*, 5:22-cr-0117-LCB-HNJ (N.D. Ala. 2022) (explaining the constitutionality of the federal felon-in-possession statute and collecting cases).

    Williams' alternative ownership theory doesn't hold water either. Even if the .22 rifle is a popular firearm choice for children, the Report and Recommendation correctly observed that "[a] firearm that reasonably appears to be in the possession of a convicted felon qualifies as contraband—and is therefore subject to seizure under the plain view doctrine." (Doc. 32 at 18) (quoting *United States v. Folk*, 754 F.3d 905, 912 (11th Cir. 2014)). That's undoubtedly the case here, where even Williams admits that "law enforcement was aware that [he] had a felony conviction." (Doc. 38 at 6). As a result, "[b]ecause law enforcement knew that [Williams] was a convicted felon and reasonably believed that the [rifle] belonged to him, the final

prong of the plain-view doctrine was also satisfied." *United States v. Coffell*, 720 F. App'x 521, 525 (11th Cir. 2017).[1]

### 3. Defendant's objection: The government failed to prove that the bag of cocaine was found in plain view.

Williams next claims that law enforcement was not lawfully in the bathroom to begin with, and that even if they were, it was unlawful for them to move shelves covering the air vent. First, Defendant argues that the presence of law enforcement in the bathroom was impermissible because "there was no reason" for law enforcement "to believe that any documents related to the silencer would be found in the garage, in the bathroom, or hidden behind shelving." (Doc. 38 at 5).

Of course, the Fourth Amendment does not hold such searches unreasonable, since a "lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *United States v. Ross*, 456 U.S. 798, 820-21 (1982). Here, because the warrant properly authorized law enforcement "to search a home for illegal weapons" (the silencer) and related documents, the warrant "also provide[d] authority to open closets, chests,

---

[1] To the extent this raises a question about law enforcement's ability to tell the difference between a .22 rifle and the multiple air rifles in Williams' garage, any proposition that ATF agents are unable to distinguish between the two is farfetched. (Doc. 32 at 12). This point was reiterated by testimony from law enforcement: "If it had a $CO_2$ canister attached to it, we know pretty much immediately that's not going to be a firearm. But the rifle was a traditional looking wooden rifle." (Doc. 37 at 3).

7

drawers, and containers in which" that evidence could be found. *Id.* at 821. Not only that, but because the "purpose and . . . limits" of the search were "precisely defined, nice distinctions between closets, drawers, and containers must give way to the interest in the prompt and efficient completion of the task at hand." *Id.* The result is that law enforcement were lawfully entitled to search the whole premises (including the bathroom), as well as any place or container within the premises, that could reasonably contain the documents listed in the warrant.

Williams' argument that law enforcement was not permitted to move the shelves also fails because, as the Magistrate Judge correctly held, "the reasonableness of a search's scope in this regard pivots on whether it is confined to the area capable of concealing the objects of the search." (Doc. 32 at 19) (collecting cases). Thus, the "warrant to search [Williams'] house . . . authorize[d]" the search of "any closet, container, or other closed compartment in the building . . . large enough to contain the contraband or evidence that they are looking for." *United States v. Evans*, 92 F.3d 540, 543 (7th Cir. 1996); *See* (Doc. 32 at 24) (collecting cases). As a result, law enforcement was entitled to move, look behind, and look under the bathroom shelves, and the discovery and seizure of the cocaine was consistent with the Fourth Amendment.

**B.** **Defendant's objection: Law enforcement's search of Defendant's garage and bathroom for documents was either an unreasonable or general search.**

Finally, Williams argues that it was unreasonable to search his bathroom and garage for documents named in the search warrant (Objections 3 & 6). Although Williams admits that law enforcement did not immediately recover all of the items named in the search warrant, (Doc. 38 at 5), he nevertheless contends that continuation of the search violated the Fourth Amendment.

First, Williams claims that the search was illegal because "there was no reason to believe that any documents related to the silencer would be found in the garage, in the bathroom, or hidden behind shelving[, and n]either the Report, nor the government, has put forth any evidence to suggest it would be reasonable to believe that documents would be in those locations." (Doc. 38 at 5). In the same vein, Defendant contends that law enforcement conducted an impermissible "general search" of his home, because "[t]he primary items named in the search warrant were discovered and seized within minutes of law enforcement's entry into Mr. Williams's home (Doc 38 at 7).

Both arguments fail. As the Magistrate Judge correctly held, "there exists 'no legal support for the proposition that, when there is probable cause that a location contains contraband, law enforcement officers . . . must stop searching once they find some contraband, even if the officers have not located all the items identified in

the warrant.'" (Doc. 32 at 14) (quoting *United States v. Reeves*, 647 F. App'x 942, 946 (11th Cir. 2016)). Thus, "even if law enforcement personnel found the silencer and Williams's mail at the outset of the search, they maintained authority to continue searching areas of the residence that could reasonably contain documents or items relating to the silencer." (Doc. 32 at 15). As a result, the search of Williams' bathroom and garage and subsequent seizure of evidence from those rooms was lawful.

## IV. Conclusion

Consistent with the report and recommendation, the Defendant's motion to suppress (Doc. 14) is **DENIED.**

**DONE** and **ORDERED** October 24, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE